UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| KELLY SURTIN, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 4:25-cv-01019-CMS |
| CITY OF O'FALLON, et al., | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

Before the Court are the Motions to Dismiss of Defendants City of St. Charles, City of St. Peters, Matthew Godfrey, Adam Ashley, Matthew Frkovic, Dominick Misuraca, City of O'Fallon, and Anthony Follmer. (Docs. 24, 26, 28, 34, 36, 38, 51, and 53). For the reasons explained below, the Motions will be granted.

**BACKGROUND**

**I. Factual Background**

The following allegations from Plaintiff's Amended Complaint (Doc. 23) are accepted as true for purposes of this Order. *See Brokken v. Hennepin Cnty.*, 140 F.4th 445, 450 (8th Cir. 2025).

On November 19, 2022, the O'Fallon Police Department (OFPD) was called to respond to an incident at an O'Fallon, Missouri, residence. (Doc. 23 ¶ 18). Plaintiff Kelly Surtin and her husband left the residence at the direction of OFPD and then drove away. *Id.* Plaintiff's 32-year-old son, Taylor Shomaker, remained inside the house for more than 90 minutes. *Id.* ¶¶ 17, 18, 21. The Amended Complaint omits the reasons OFPD was called to the residence but does mention Shomaker's willingness to shoot his stepfather. *Id.* ¶ 101. Defendant OFPD Police Officers Matthew Frkovic, Adam Ashley, and Dominick Misuraca, and other law enforcement officers,

"including SWAT, St. Charles City Police Department, and St. Charles County Police Department," set up a perimeter around the residence. *Id.* ¶ 19.

A command center was established approximately 1.5 miles away. *Id.* ¶ 20. A police officer at the command center ("Communications Officer") communicated with Shomaker by text message. *Id.* ¶ 22. Communications Officer also communicated with the officers at the residence, including Defendant Officers and the SWAT team. *Id.* ¶ 23. Shomaker stated that he had post-traumatic stress disorder (PTSD), and Communications Officer informed the other officers of Shomaker's PTSD. *Id.* ¶ 24.

Shomaker also stated to Communications Officer, "I'm coming out to let my dog out. I am armed. Be calm." *Id.* ¶ 26. Communications Officer told Shomaker he would "let everyone know" and asked "[w]hat door . . . [Shomaker was] coming out so [the officers were] not shocked or surprised." *Id.* ¶ 27. Communications Officer did not instruct Shomaker to "remain in the house" or tell him that "he would be shot by police if he did not leave his gun inside." *Id.* ¶¶ 30–31. Instead, Communications Officer told Shomaker he was "not [t]here to hurt [him]" and informed the officers that "Shomaker was coming out of the house, to let his dog out of the car . . ., [and] that he was armed and told the officers to be calm." *Id.* ¶¶ 31, 33–35.

Shomaker, while holding a gun pointed down at the ground in his right hand, exited the garage and began calmly walking toward the rear-passenger side of his vehicle where his dog was located. *Id.* ¶¶ 36–37. According to the Amended Complaint, Shomaker never "move[d] his right hand and/or move[d] the gun in any manner," nor did he "make any threatening movements towards any officer" or make any "affirmative movements . . . which [could have been] deemed threatening . . . ." *Id.* ¶¶ 39–40. The officers yelled at Shomaker to "drop the gun." *Id.* ¶¶ 41, 121.

Instead, Shomaker pointed to his car with his left hand and reiterated that he was letting his dog out. *Id.* ¶ 42.

The Amended Complaint alleges that, within six seconds of the officers yelling "drop the gun," the first shot was fired. *Id.* ¶ 45. Defendant Frkovic "fired five shots using his shoulder .223 assault rifle towards . . . Shomaker." *Id.* ¶ 44. The Amended Complaint states, "Shomaker did not react [or] make any movements with his right arm or gun. He continued to point the gun towards the ground, remained calm, and continued walking towards" the car. *Id.* ¶ 63. Upon reaching his car, he let his dog out and closed the door. *Id.* ¶ 64.

Immediately after closing the door, "Shomaker was shot in the leg and began hopping beside his car" with his gun still pointed at the ground. *Id.* ¶ 65. While Shomaker "was hopping away from Defendants Frkovic and Ashley, with his back . . . facing them," Defendant Officers kept firing shots at him. *Id.* ¶¶ 66–67. The Amended Complaint claims that Shomaker "was shot multiple times by Defendant Officers," mostly in his back. *Id.* ¶ 68. Defendant Frkovic fired ten shots, Defendant Ashley fired five shots, Defendant Misuraca fired one shot, Defendant Follmer fired one shot, and Defendant Godfrey fired two shots." *Id.* ¶¶ 76–80.

Defendant Frkovic reported that, because of the imminent risk Shomaker "'posed to the public and other officers on scene, [and] the fact that he was turning in my direction and could quickly raise the firearm significantly faster than I would be able to defend myself, I was in fear for my life.'" *Id.* ¶ 101. He continued, "'I became worried because I felt that if the suspect was willing to shoot his own step-father, he would be even more willing to shoot police or other citizens[.]'" *Id.*

According to the Amended Complaint, Plaintiff and her husband "were misled by the police officers that . . . Shomaker exited the house and immediately began firing." *Id.* ¶ 100. The

Amended Complaint alleges that Defendant Frkovic made numerous false claims in his incident report, while Defendant Ashley claimed the shooting was justified. *Id.* ¶¶ 101–02.

## II. Procedural Background

Plaintiff filed the operative Amended Complaint on September 23, 2025. (Docs. 21, 23).

On October 3, 2025, Defendants City of St. Charles, City of St. Peters, and Godfrey filed a Motion to Dismiss Count IV of the Amended Complaint for failing to demonstrate a meeting of the minds regarding the alleged conspiracy. (Docs. 24 and 25). On the same date, Defendant Godfrey filed his Motion to Dismiss Counts I, II, and V of the Amended Complaint because: (1) Count I is a "shotgun pleading," (2) Plaintiff lacks standing to bring Count II, and qualified immunity precludes liability as to Count II, and (3) Plaintiff fails to state a claim against Defendant Godfrey in Count V because he is not mentioned in that count. (Docs. 26 and 27). Finally on October 3, 2025, Defendants City of St. Charles and City of St. Peters filed a Motion to Dismiss Count III, arguing Plaintiff pleads only legal conclusions rather than factual allegations. (Docs. 28 and 29).

On October 14, 2025, Defendants City of O'Fallon, Ashley, Frkovic, and Misuraca filed their Answer (Doc. 33). Defendants Ashley, Frkovic, and Misuraca also filed a Motion to Dismiss Count II because "there is no clearly established law providing notice that the allegations in Count II . . . violate the Second Amendment . . . ." (Docs. 35 and 36). On the same date, Defendant City of O'Fallon filed a Motion to Dismiss Count III arguing that Plaintiff pleads only legal conclusions. (Docs. 36 and 37). Finally on October 14, 2025, Defendants City of O'Fallon, Ashley, Frkovic, and Misuraca filed a Motion to Dismiss Count IV for its failure to plead material facts showing an agreement to conspire. (Docs. 38 and 39).

On January 2, 2026, Defendant Follmer filed a Motion to Dismiss "join[ing] in and re-submit[ting] the arguments made by co-Defendants" City of O'Fallon, City of St. Peters, and Godfrey. (Docs. 51 and 52). Also on January 2, Defendant Follmer filed his Motion to Dismiss himself from the Amended Complaint because: (1) Count I is a shotgun pleading, (2) Plaintiff lacks standing to bring Count II, and qualified immunity precludes liability as to Count II, and (3) Plaintiff fails to state a claim against Defendant Follmer in Count V because he is not mentioned in that count. (Docs. 53 and 54).

## LEGAL STANDARDS

### I. Motion to Dismiss

A defendant may move to dismiss a claim for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must include "a short and plain statement of the claim showing that the [plaintiff] is entitled to relief . . . to give the defendant fair notice of . . . the claim . . . and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (internal citations omitted); FED. R. Civ. P. 8(a)(2). The complaint must "contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted), and "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Delker v. MasterCard Int'l, Inc.*, 21 F.4th 1019, 1024 (8th Cir. 2022) (citing *Twombly*, 550 U.S. at 555). The issue is not whether the plaintiff will prevail, but whether he is "entitled to present evidence in support of his claim." *Id.*

When analyzing a motion to dismiss, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Brokken*, 140 F.4th at 450. That said, the Court does not "presume the truth of legal conclusions." *Jones v. City of St.*

*Louis*, 104 F.4th 1043, 1046 (8th Cir. 2024) (internal citations omitted). The Court's analysis is context specific and "requires the reviewing court to draw on its judicial experience and common sense." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009).

**II. Qualified Immunity**

A government official sued in his "individual capacit[y] under § 1983 may assert the affirmative defense of qualified immunity."[1] *Cannon v. Dehner*, 1121 F.4th 580, 585 (8th Cir. 2024) (internal citations omitted). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Thus, a government official is protected "unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Faulk v. City of St. Louis*, 30 F.4th 739, 744 (8th Cir. 2022) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). Such a right is "clearly established" when "its contours are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Ryno v. City of Waynesville*, 58 F.4th 995, 1004 (8th Cir. 2023) (internal citations omitted). "Government officials are personally liable only for their own misconduct." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). Accordingly, courts must make an "*individualized* analysis of *each* officer's alleged conduct." *Id.* (quotation omitted) (emphasis in original).

[1] At the outset, the Amended Complaint purports to sue each Defendant Officer "in both his individual and official capacities." (Doc. 23 ¶¶ 3–7). But in the title of each count naming Defendant Officers, they are sued "in their individual capacities" only. *Id.* at 14, 15, 20, 23. Therefore, the affirmative defense of qualified immunity applies.

## III. *Monell* Liability

Municipal bodies may be liable for civil rights claims under Section 1983, but they bear responsibility only for their own conduct and not that of their employees. *Soltesz v. Rushmore Plaza Civic Ctr.*, 847 F.3d 941, 947 (8th Cir. 2017) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978)). Thus, "[t]he Supreme Court has set a high bar" for such claims, requiring "careful analysis . . . to avoid any risk that liability could be imposed under a theory of respondeat superior." *Id.* (internal citations omitted). "[Section] 1983 liability . . . may attach to a municipality if the violation resulted from (1) an official municipal policy, . . . (2) an unofficial custom, . . . or (3) a deliberately indifferent failure to train or supervise." *Watkins v. City of St. Louis*, 102 F.4th 947, 953 (8th Cir. 2024) (internal citations omitted). Further, the plaintiff "must prove that a municipal policy or custom was the moving force behind the constitutional violation." *Id.* (internal quotations and citations omitted). The same is true for an alleged failure to train or supervise. *See Doe v. Fort Zumwalt R-II Sch. Dist.*, 920 F.3d 1184, 1189 (8th Cir. 2019).

# DISCUSSION

## I. Count I

In Count I, Plaintiff claims "Defendant Officers fired shots from their weapons," which constituted excessive force because "it was unreasonable in light of the circumstances . . . ." (Doc. 23 ¶¶ 109–11). Plaintiff seeks damages for both her own pain and suffering and for that of Shomaker. *Id.* ¶¶ 114–16. For example, Plaintiff alleges she "has been deprived of decedent's valuable services, companionship, comfort, consortium, support, love, and affection." *Id.* ¶¶ 115, 127. She also alleges she has suffered "physical, emotional and mental injuries and will continue to suffer mental anguish, humiliation, embarrassment, loss of enjoyment of life, and extreme stress." *Id.* ¶ 152.

"A police officer's use of deadly force against a suspect is a 'seizure' under the Fourth Amendment." *Cole Estate of Richards v. Hutchins*, 959 F.3d 1127, 1132 (8th Cir. 2020) (internal citations omitted). But "litigants typically lack standing to assert the constitutional rights of third parties," *United States v. Hansen*, 599 U.S. 762, 769 (2023), and the Fourth Amendment is no exception. The Supreme Court has made clear that "Fourth Amendment rights are personal rights which . . . may not be vicariously asserted." *Plumhoff v. Rickard*, 572 U.S. 765, 2022 (2017) (quoting *Alderman v. United States,* 394 U.S. 165, 174 (1969)).

That said, the Eighth Circuit has held that, in a Section 1983 case, a third party may sue for damages due to a decedent's injury under Missouri law, but the plaintiff lacks standing to recover for his own injury. *Andrews v. Neer*, 253 F.3d 1052, 1058, 1063–64 (8th Cir. 2001) (granting plaintiff standing to bring Section 1983 claim in personal capacity for injury to decedent but affirming lower court's reversal of damages for plaintiff's own injury). To the extent Plaintiff claims damages for her own injuries due to the alleged violations of Shomaker's constitutional rights, Plaintiff has no standing.

As for the merits of Plaintiff's claim, an excessive force claim is assessed by "evaluating the totality of the circumstances, [considering] the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Klum v. City of Davenport*, 145 F.4th 907, 912 (8th Cir. 2025) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)); *see also Rogers v. King*, 885 F.3d 1118, 1121–22 (8th Cir. 2018) (considering decedent's mental state and non-compliance with orders to drop gun as part of totality of circumstances analysis).

In *Klum*, decedent Klum walked around a neighborhood with a firearm pointed to his own head. *Klum*, 145 F.4th at 910. Officers instructed Klum multiple times to drop the firearm, but

Klum did not comply and continued walking around. *Id.* Officers fired non-lethal rounds at Klum, but they did not deter him. *Id.* Klum then began walking in the general direction of bystanders approximately half a block away, and the officers shot and killed him. *Id.* The Eighth Circuit observed that, though Klum did not point the gun at the bystanders or threaten the officers, the officers were "confronted with an evolving set of circumstances" when Klum was unaffected by the non-lethal rounds, did not comply with their instructions to drop the gun, and began walking in the general direction of bystanders. *Id.* at 913. Thus, the Eighth Circuit held that the officers were entitled to qualified immunity. *Id.* at 914.

A government official is entitled to qualified immunity unless a plaintiff demonstrates "(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Faulk*, 30 F.4th at 744. Such a right is "clearly established" when "its contours are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Ryno*, 58 F.4th at 1004.

Here, as in *Klum*, the officers were confronted with an evolving set of circumstances when Shomaker was undeterred by police commands to drop the gun and five "warning shots," and continued walking toward and opening his car, the contents of which were unknown, with neighbors nearby. *Id.* ¶ 44. Similarly, as in the *Rogers* case, Shomaker was instructed to drop his firearm, refused to do so, and allegedly suffered from the mental health condition of PTSD. (Doc. 23 ¶¶ 24, 41).[2] Plaintiff's Amended Complaint demonstrates that numerous police officers made

---

[2] *Klum* and *Rogers* were summary judgment cases, not Rule 12(b)(6) cases, but that is a distinction without a difference here. Both kinds of cases are decided as a matter of law and reviewed *de novo*. *See Trooien v. Mansour*, 608 F.3d 1020, 1026 (8th Cir. 2010) ("We review de novo a district court's contested dismissal of claims, accepting as true all facts alleged in the complaint . . . . We also review de novo a district court's grant of summary judgment, viewing the evidence in the light most favorable to the nonmoving party."). For instance, in *Miller-Fields v. Londregan*, 180 F.4th 1152, 1158 (8th Cir. 2026), a Section 1983 excessive-force case in which a state trooper shot

up the perimeter around the residence and neighbors and witnesses were well within range. *See* (Doc. 23 ¶¶ 19, 84) ("A neighbor . . . resides two doors away from the subject residence[,] was witness to the events and the shooting. . . . [and his] house was hit by 3 bullets."); *see also* (Doc. 23 ¶ 86) ("Neighbors 2 and 3 reside directly across the street from the subject residence and were also witnesses . . . .").

Based on the Eighth Circuit's decisions in *Klum* and *Rogers*, the officers did not violate a statutory or constitutional right of Shomaker, Shomaker had no clearly established Fourth Amendment right to be free from the force exercised by the officers, and Defendants are entitled to qualified immunity. At bottom, "[t]here is no 'statutory or constitutional right' that prevents an 'officer from using deadly force when faced with an apparently loaded weapon.'" *Rogers*, 885 F.3d at 1122 (quoting *Aipperspach v. McInerney*, 766 F.3d 803, 807 (8th Cir. 2014)).

**II. Count II**

In Count II, Plaintiff alleges Shomaker was lawfully carrying a gun when "Defendant Officers unlawfully seized his firearm by shooting and killing [him]," and "deprived him of his ability to acquire any other firearm." (Doc. 23 ¶¶ 119, 122–25). Thus, Plaintiff claims the officers violated Shomaker's Second Amendment right to bear arms. *Id.* ¶ 124.

"[S]ection 1983 does not provide a cause of action on behalf of a deceased for events occurring after death." *Riley v. St. Louis County*, 153 F.3d 627, 629 n.3 (8th Cir. 1998) (citing *Guyton v. Phillips*, 606 F.2d 248 (9th Cir. 1979)). Here, at least one of the purported Second Amendment violations—depriving Shomaker of his right to possess firearms in the future—could

---

and killed the decedent, the Eighth Circuit recently affirmed the district court's Rule 12(b)(6) dismissal of the case based on qualified immunity. The *Miller-Fields* court relied for its qualified immunity analysis on *Morgan-Tyra v. City of St. Louis*, 89 F.4th 1082, 1086 (8th Cir. 2024), in which the Eighth Circuit affirmed the district court's grant of summary judgment based on qualified immunity.

occur only after his death. (Doc. 23 ¶¶ 124–25). Plaintiff therefore cannot bring that claim on behalf of Shomaker pursuant to Section 1983.

Count II also altogether fails under the qualified immunity doctrine. Plaintiff does not demonstrate a clearly established Second Amendment right of Shomaker to carry a firearm in his hand when he is involved in an extended standoff with police officers, the police officers were called to the scene due to apparent threats by Shomaker against his stepfather, the officers had ordered Shomaker to drop the gun, and bystanders were nearby. Count II does not allege any such clearly established right and, unsurprisingly, this Court's research has not revealed one. *See Faulk*, 30 F.4th at 744 (stating that, to avoid qualified immunity, a plaintiff must plead facts showing violation of a clearly established right).

**III. Count III**

In Count III, Plaintiff claims "City Defendants" are liable under *Monell* for an unconstitutional custom or practice and for failure to properly train, equip, or supervise "Defendant Officers." (Doc. 23 at 17–18).

Regarding unconstitutional customs and practices, Plaintiff claims that "on numerous occasions, City Defendants' Officers," among other things, "shot at non-threatening individuals," "shot and killed an individual by using excessive lethal force," "used excessive force," "used excessive force on individuals by shooting them," and "took away a gun without cause," and the "City Defendants" failed to take corrective action. *Id.*

Regarding failure to train, equip, or supervise, Plaintiff claims "City Defendants" failed to "properly train, equip and/or supervise Defendant Officers" about drafting incident reports, non-lethal threats, chain of command, and keeping their fingers out of the trigger well of a firearm. *Id.* at 18–19.

> To establish an unconstitutional custom, a plaintiff must show:
>
> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> 2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
>
> 3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cnty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013) (internal citations omitted). For a pattern of unconstitutional conduct to qualify for *Monell* liability, it "must be so pervasive and widespread so as to have the effect and force of law." *Brewington v. Keener*, 902 F.3d 796, 801 (8th Cir. 2018) (internal citations and quotations omitted).

Additionally, to establish failure to train, a plaintiff must allege:

> (1) the city's hiring and training practices are inadequate; (2) the city was deliberately indifferent to the rights of others in adopting them, such that the "failure to train reflects a deliberate or conscious choice by a municipality"; and (3) an alleged deficiency in the city's hiring or training procedures actually caused the plaintiff's injury.

*Andrews v. Fowler*, 98 F.3d 1069, 1076 (8th Cir. 1996) (internal citations omitted). The plaintiff must show that "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Id.* At the motion to dismiss stage, the facts alleged "about each element of the claim [must] raise a right to relief above a speculative level," and "[c]onclusory assertions that are unsupported by facts will not satisfy this pleading standard." *See Jackson v. City of Maplewood*, No. 4:24-cv-1207-NCC, 2025 WL 2299393, at *7 (E.D. Mo. Aug. 7, 2025) (internal citations omitted); *Watkins*, 102 F.4th at 953.

Here, Plaintiff fails to sufficiently allege City Defendants' unconstitutional policies or customs, or their failure to train or supervise. Instead, Plaintiff makes broad, conclusory claims that "City Defendants'" officers "used excessive force," and "City Defendants" failed to properly train, equip, or supervise their officers and "demonstrated deliberate indifference," with a dearth of specific facts. (Doc. 23 ¶¶ 131–36). Plaintiff does not allege any pattern of unconstitutional conduct by City Defendants "so pervasive and widespread so as to have the effect and force of law." *Brewington*, 902 F.3d at 801. Nor has Plaintiff shown that "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Andrews*, 98 F.3d at 1076.

Worse, Count III is a "shotgun pleading." As relevant here, a shotgun pleading is one in which the "plaintiff brings every conceivable claim against every conceivable defendant, resulting in a cause of action so general that it fails to put the various defendants on notice of the allegations against them." *Chole v. Bos. Sci. Corp.*, No. 4:19-cv-03976-JAR, 2020 WL 1853266, at *2 (E.D. Mo. Apr. 13, 2020). Shotgun pleadings, therefore, fail to provide notice of the grounds on which a claim rests and lack sufficient detail to be plausible on their face. *See, e.g.*, *Twombly*, 550 U.S. at 544. Federal constitutional tort liability "is personal, so each defendant's conduct must be independently assessed," and "Section 1983 does not sanction tort by association." *Heartland Acad. Cmty. Church v. Waddle*, 595 F.3d 798, 805–06 (8th Cir. 2010) (internal citations and quotations omitted); *see also Crew v. Minor*, No. 2:18-cv-27-CAS, 2018 WL 4922218, at *8 (E.D. Mo. Oct. 10, 2018) (quoting *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990)) ("Liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights.") (internal quotations omitted).

Here, Count III implicates "City Defendants," "Defendant Cities," and even more generally "Defendants," without otherwise identifying the defendants subject to the various allegations in that count.[3] Further confusing the situation, the Amended Complaint initially states that the cities of "O'Fallon, St. Charles and St. Peters will be referenced as 'Defendant Cities,'" (Doc. 23 ¶ 11), but then identifies the police departments that responded to the scene as O'Fallon, St. Charles City, and St. Charles County, *id.* ¶¶ 18–19, which is not a defendant in this case. The Amended Complaint likewise states that the named police officers "will collectively be referred to as 'Defendant Officers.'" *Id.* ¶ 13. Despite thus having established that the defendants in this case will be referred to as either "Defendant Cities" or "Defendant Officers," the Amended Complaint, including Count III, then indiscriminately directs various allegations at generic "Defendants." *See id.* ¶¶ 93–99, 139–43.

As examples, Count III alleges that "City Defendants" possess "widespread customs, practices and usages that are so pervasive that they constitute the policies of each City and its police department . . . ." (Doc. 23 ¶ 131). Plaintiff states that, "on numerous occasions," and even "monthly," officers of "City Defendants" shot at, killed, used excessive force against, and unconstitutionally appropriated a gun from, individuals without elaboration or differentiation. *Id.*[4]

[3] The only effort in Count III to specify the customs or practices of any particular city is in several subparagraphs of paragraph 131. There, Plaintiff singles out the City of O'Fallon as having police officers with a "warrior mindset," whose "unconstitutional conduct is not appropriately investigated . . . or disciplined, so as to tacitly approve of the conduct," and who are "involved in shootings monthly" and have "zero remorse." (Doc. 23 ¶ 131(f)–(i)). As already explained, those allegations do not amount to customs or practices of City Defendants and certainly are not "so pervasive and widespread so as to have the effect and force of law." *Brewington*, 902 F.3d at 801. In any event, Count III immediately reverts to generic references to "City Defendants" and, in shotgun fashion, that they "knew about each of these constitutional violations but took no corrective action . . . ." *Id.* ¶ 132.

[4] Immediately after making these hyperbolic allegations, the Amended Complaint follows with the relatively pedestrian: "Upon information and belief, this is not the first fatal shooting for Defendant

Plaintiff asserts that all "City Defendants" possessed these customs and practices and that "City Defendants knew about each of these constitutional violations," again without distinguishing among the cities or the roles of their police officers. *Id.* ¶ 132.

Plaintiff similarly alleges that all "Defendant Cities failed to supervise, control, and/or discipline officers when they engaged in constitutional violations," again without accurately identifying "Defendant Cities" or distinguishing the cities or the actions of their officers. *Id.* ¶¶ 136, 137.

Finally, pivotal causation allegations in Count III implicate only unidentified "Defendants." Count III alleges that Plaintiff was damaged by "Defendants'" acts, deficiencies in "Defendants[']" training procedures caused Shomaker's death, and Shomaker was killed as the result of acts or omissions of "Defendants." *Id.* ¶¶ 139–43. Plaintiff then demands punitive damages to punish "Defendants in their individual capacities," a demand out of place in a *Monell* count nominally aimed at City Defendants. *Id.* ¶ 143. Count III concludes with a prayer for relief against "individual Defendants, jointly and severally," whomever they may be. *Id.* ¶ 143.

Plaintiff's Count III is too general to put each Defendant and City Defendant on notice of the allegations against it. *Chole*, 2020 WL 1853266, at *2. For that reason, Count III fails to provide notice of the grounds on which it rests. *Twombly*, 550 U.S. at 544. Accordingly, the Court will dismiss Count III.

## IV. Count IV

In her Responses to Defendants' Motions to Dismiss (Docs. 42–43), Plaintiff concedes that Count IV should be dismissed without prejudice. Accordingly, the Court will dismiss Count IV.

---

Cities." (Doc. 23 ¶ 134). The Court nonetheless accepts the allegations in the Amended Complaint at face value. *See Brokken*, 140 F.4th at 450.

**V. Count V**

In Count V, Plaintiff brings a wrongful death claim under "the Missouri wrongful death statute" and Missouri common law, and invokes "the supplemental jurisdiction of this Court to hear and decide the claims arising under state law pursuant to 28 U.S.C. § 1367." (Doc. 23 ¶¶ 14, 155–60).

A district court "may decline to exercise supplemental jurisdiction over a claim" if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); *see also Gibson v. Weber*, 431 F.3d 339, 342 (8th Cir. 2005) ("Congress unambiguously gave district courts discretion . . . to dismiss supplemental state law claims when all federal claims have been dismissed."). Because all federal claims will be dismissed and the remaining Count V is a state-law claim better addressed by a Missouri court, the Court declines to exercise supplemental jurisdiction and will dismiss Count V.

**CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Defendants Godfrey and Follmer's Motions to Dismiss Counts I, II, and V (Docs. 26, 53) are **GRANTED**. Counts I, II, and V of the Amended Complaint are dismissed.

**IT IS FURTHER ORDERED** that Defendants Ashley, Frkovic, and Misuraca's Motion to Dismiss Count II (Doc. 34) is **GRANTED**. Count II of the Amended Complaint is dismissed.

**IT IS FURTHER ORDERED** that Defendants City of St. Charles, City of St. Peters, and City of O'Fallon's Motions to Dismiss Count III (Docs. 28 and 36) are **GRANTED**. Count III of the Amended Complaint is dismissed.

**IT IS FURTHER ORDERED** that Defendants City of St. Charles, City of St. Peters, and Godfrey's Motion to Dismiss Count IV (Doc. 24), Defendants Ashley, City of O'Fallon, Frkovic, and Misuraca's Motion to Dismiss Count IV (Doc. 38), and Defendant Follmer's Motion to Dismiss Count IV (Doc. 51) are **GRANTED**. Count IV of the Amended Complaint is dismissed.

**IT IS FINALLY ORDERED** that this case is **DISMISSED** and the Clerk of Court is ordered to close this case.

So ordered this 3rd day of September 2026.

CRISTIAN M. STEVENS
UNITED STATES DISTRICT JUDGE